UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN E. WILLIAMS III, | CASE NO. C14-1089 MJP |
| Plaintiff, | ORDER ON MOTIONS TO DISMISS, SECOND AMENDED COMPLAINT |
| v. | |
| NATIONAL FOOTBALL LEAGUE et al., | |
| Defendants. | |

THIS MATTER comes before the Court on Defendants Football Northwest LLC d/b/a the Seattle Seahawks, First & Goal Inc., the Washington State Public Stadium Authority, and Ticketmaster LLC's Motion to Dismiss (Dkt. No. 72) and Defendants National Football League and NFL Properties LLC's Joinder and Motion to Dismiss (Dkt. No. 73). After the motions noted for the Court's consideration, Plaintiff John Williams III, who is proceeding pro se, filed a second proposed Amended Complaint (Dkt. No. 89), which the Court will construe as a motion for leave to file a second amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). Having considered the motions, Plaintiff's Response (Dkt. No. 78), Defendants'

procedural and substantive Replies (Dkt. Nos. 76, 77, 79, 80), Plaintiff's Surreply (Dkt. No. 81), Defendants' responsive Surreply (Dkt. No. 83), Plaintiff's final Surreplies (Dkt. No. 84, 86), and Plaintiff's proposed Amended Complaint (Dkt. No. 89) and Defendants' Motions to Strike the proposed Amended Complaint (Dkt. Nos. 90, 91), the Court hereby DISMISSES the First Amended Complaint with prejudice, DENIES leave to file a Second Amended Complaint because amendment would be futile, and DENIES the Motions to Strike.

## Background

Pro se plaintiff John E. Williams filed a complaint in the District of Nevada alleging various constitutional and statutory violations arising out of the Seahawks' restriction of primary-market ticket sales for the NFC Championship game between the Seahawks and the 49ers to buyers with billing addresses in Washington and other nearby states and provinces. (See Dkt. No. 1.) Judge Andrew P. Gordon of the District of Nevada ordered the case transferred to the District of Western Washington on July 11, 2014. (Dkt. No. 47.) Plaintiff filed an amended Complaint on August 12, 2014 (Dkt. No. 66), and Defendants moved to dismiss. (Dkt. Nos. 72, 73.)

Plaintiff alleges he was denied an opportunity to purchase tickets to the January 16, 2014 game between the Seahawks and the San Francisco 49ers at Seattle's CenturyLink Field. (Dkt. No. 66 at 6.) A 49ers fan and Nevada resident, Plaintiff alleges the geographic restriction on ticket sales injured him because he was "excluded from the purchase of tickets" in the primary market. (Id.) Plaintiff acknowledges that sales on the secondary market are not geographically restricted, but alleges the secondary market offers tickets at inflated prices. (Id. at 9.) Plaintiff further alleges various facts relating to the financing of the stadium itself (id. at 2–3), the role of the NFL commissioner (id. at 4–5), and the tax-exempt status of the NFL (id. at 5).

Plaintiff acknowledges the NFL's position that it does not set policy for ticket sales by individual teams, but asserts the NFL has an obligation to promulgate a policy that complies with federal law. (Id. at 6.) Finally, Plaintiff alleges Ticketmaster complies with the Seahawks' geographic restriction policy and operates a market for secondary sales. (Id.)

Plaintiff seeks a declaration that the geographic restriction is unlawful on the basis of "economic discrimination and violation of public accommodation" (id. at 6–7) as well as damages for violation of the Washington Consumer Protection Act and its federal counterpart (id. at 7–8), for violation of the Sherman Act (id. at 8) and the Clayton Act (id. at 9), and for unjust enrichment (id. at 8–9).

Plaintiff's proposed Second Amended Complaint brings very similar claims for relief, but presents selected additional facts about the roles of individuals in the Defendant organizations and cites NFL By-Laws, while eliminating other facts about the Washington State Public Stadium Authority. (See Dkt. No. 89.)

**Analysis**

I.     Legal Standard

The Federal Rules require a plaintiff to plead "a short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 545). In determining plausibility, the Court accepts all facts in the Complaint as true. Barker v. Riverside Cnty. Office

1  of Educ., 584 F.3d 821, 824 (9th Cir. 2009). The Court need not accept as true any legal

2  conclusions put forth by the plaintiff. Iqbal, 556 U.S. at 678.

3      II.      Late Opposition and Pro Se Status

4  As Defendants observe (Dkt. Nos. 76, 77), Plaintiff's opposition to Defendants' Motions

5  to Dismiss was due September 15 according to Local Civil Rule 7(d)(3). LCR 7(d)(3) ("Any

6  opposition papers shall be filed and served not later than the Monday before the noting date.").

7  "Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules

8  of procedure." Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir. 1995). Not only did Plaintiff file his

9  opposition after the noting date, on which the Court could begin to consider the motions, he has

10 also filed several surreplies that are not permitted by the rules without seeking the Court's leave.

11 In light of Plaintiff's pro se status, the Court exercises its discretion to consider the late

12 opposition and the surreplies, but requires Plaintiff to adhere to all procedural rules in the future.

13     III.     "Economic Discrimination" and Public Accommodation

14 Plaintiff's request for a declaratory judgment is based on claims of "economic

15 discrimination" and violation of public accommodation laws. (Dkt. No. 66 at 6.) With respect to

16 the first claim, Plaintiff clarifies in his Response that it refers to the alleged economic harm done

17 to "the Economy in Seattle as well as the State of Washington State, since most of the tickets

18 sold was to locals in your market place." (Dkt. No. 78 at 10.)

19 Defendants Football Northwest LLC D/B/A The Seattle Seahawks, First & Goal Inc.,

20 The Washington State Public Stadium Authority, and Ticketmaster LLC (the "Seahawks

21 Defendants") correctly point out a free-standing assertion of "economic discrimination" does not

22 state a cognizable legal claim. Furthermore, Plaintiff lacks standing to complain about economic

23 harm done to the city of Seattle or Washington state, as he attempts to do in his Response. (See

24 Dkt. No. 78 at 10.)

ORDER ON MOTIONS TO DISMISS, SECOND
AMENDED COMPLAINT- 4

The Seahawks Defendants hypothesize Plaintiff might have intended to assert a Privileges and Immunities Clause claim, which does concern certain kinds of discrimination by a state against citizens of another state in favor if its own citizens. (Dkt. No. 72 at 11–12.) However, as the Seahawks Defendants note, the privileges protected by the Privileges and Immunities Clause do not include recreational activities such as attending a football game. See Baldwin v. Fish & Game Comm'n of Montana, 436 U.S. 371, 388 (1978) (distinguishing unprotected "recreation" and "sport" activities from activities that are "means to the nonresident's livelihood," "basic to the maintenance or well-being of the Union," or a component of the right to travel).

As for public accommodation, the Court agrees with the Seahawks Defendants that Title II of the Civil Right Act of 1964 does not extend to discrimination on the basis of state residence. See 42 U.S.C. § 2000a(a). Neither does the Washington equivalent, the Washington Law Against Discrimination. See RCW 49.60.215.

Plaintiff fails to state a claim for economic discrimination on the facts alleged.

IV.     Washington Consumer Protection Act and "Federal Consumer Protection" Law

Next the Seahawks Defendants challenge Plaintiff's invocation of the Washington Consumer Protection Act, which prohibits unfair or deceptive acts or practices in trade or commerce. See RCW 19.86.020. The Seahawks Defendants contend Plaintiff has not stated a claim under this provision because there was no unfair or deceptive act or practice, the first element of a WCPA claim. See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 785 (1986). The Court cannot discern any allegations about an unfair or deceptive act or practice as the term is defined in the statute in Plaintiff's Amendment Complaint; rather, the policy appears to be clear on its face. See id. ("A plaintiff need not show that the act in question was intended to deceive, but that the alleged act had the capacity to

deceive a substantial portion of the public.") (emphasis in original). Plaintiff urges in his Response that the geographic sales restriction "makes it an unfair game to the Forty-Niners since the crowd gets so loud when the Forty-Niner Quarterback makes his call, it makes it an unfair game" (Dkt. No. 78 at 5); unfortunately, any inequity whose source is the volume of the CenturyLink crowd does not state a legal claim under the WCPA.

There is no statute entitled the Federal Consumer Protection Law (Dkt. No. 66 at 7) or the Federal Consumer Fraud Act (id. at 5). Assuming Plaintiff intended to refer to the Federal Trade Commission Act, as his Response suggests (see Dkt. No. 78 at 7–8), the claim fails because there is no private right of action under the "unfair or deceptive acts or practices" section of the FTCA. See 15 U.S.C. § 45(a); Dreisbach v. Murphy, 658 F.2d 720, 730 (9th Cir. 1981).

Plaintiff fails to state a claim under the WCPA or similar federal law.

V.     Antitrust Claims

Defendants also move to dismiss Plaintiff's antitrust claims pursuant the Sherman Act and Clayton Act. The Sherman Act claims depend as an initial step on a plaintiff establishing market power in a "relevant market." See Tanaka v. University of Southern California, 252 F.3d 1059, 1063 (9th Cir. 2001) ("Tanaka's complaint alleges that the relevant geographic market is Los Angeles and the relevant product market is the 'UCLA women's soccer program.' Neither of these 'markets' is appropriately defined for antitrust purposes, even at this stage of the litigation."). Plaintiff's threadbare allegations do not relate to competition between firms in a market, but to the exercise of a natural monopoly on sales of tickets to a single stadium. See Bushie v. Stenocord Corp., 460 F.2d 116, 120 (9th Cir. 1972) ("A manufacturer has a natural monopoly over [its] own products . . . . [u]nless the manufacturer used his natural monopoly to gain control of the relevant market in which his products compete, the antitrust laws are not violated.").

1     The Clayton Act, meanwhile, applies solely to commodities. Tickets to a Seahawks game

2 are not tangible goods, but revocable licenses, so the Clayton Act does not apply. See <u>Kennedy</u>

3 <u>Theater Ticket Servs. V. Ticketron, Inc.</u>, 342 F. Supp. 922, 925–27 (E.D. Pa. 1972).

4     Plaintiff fails to state an antitrust claim.

5     VI.    Unjust Enrichment

6     Finally, Plaintiff alleges the Defendants—presumably, Ticketmaster—are unjustly

7 enriched by sales on the secondary market for amounts in excess of the face value. (Dkt. No. 66

8 at 8–9.) A plaintiff claiming unjust enrichment must plausibly allege facts supporting three

9 elements: "a benefit conferred upon the defendant by the plaintiff; an appreciation or knowledge

10 by the defendant of the benefit; and the acceptance or retention by the defendant of the benefit

11 under such circumstances as to make it inequitable for the defendant to retain the benefit without

12 the payment of its value." <u>Young v. Young</u>, 164 Wn.2d 477 (2008). Since Plaintiff cannot allege

13 he purchased a ticket on the secondary market (indeed, he alleges he was unable to attend the

14 game), he never conferred a benefit upon any Defendant. This claim fails as well.

15     VII.    Amended Complaint

16     Under Federal Rule of Civil Procedure 15(a), the second attempt to amend a complaint

17 requires leave of the court. Although Defendants ask to strike Plaintiff's proposed Amended

18 Complaint, their opposition stems from Plaintiff's failure to formally request leave of the Court.

19 (See Dkt. No. 90 at 2; Dkt. No. 91 at 1–5.) Since the Court is interpreting Plaintiff's proposed

20 Second Amended Complaint as a request for leave, the Court declines to strike Plaintiff's

21 request. In deciding whether the grant a motion to amend, the court considers a number of

22 factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies

23 by amendments previously allowed, undue prejudice to opposing parties, harm to the movant if

24 leave is not granted, and futility of the amendment. <u>Foman v. Davis</u>, 37 U.S. 178, 182 (1962);

Martinez v. Newport Beach City, 125 F.3d 777, 785 (9th Cir. 1997). Courts should not grant leave to amend where amendment would be futile. See Nunes v. Ashcroft, 348 F.3d 815, 818 (9th Cir. 2003). Plaintiff's proposed Second Amended Complaint contains new facts but they fail to address the deficiencies the Court has identified above. In addition, it recycles the same causes of action under new labels. (See, e.g., Fifth Claim for Relief (Unjust Enrichment), Dkt. No. 89 at 8 (addressing Sherman Act violations); Third Claim for Relief (Violations of Sherman Act), Dkt. No. 66 at 8 (using the same language to address the same Sherman Act violations).) Because the proposed amendments would be futile, the Court denies leave to amend.

## Conclusion

The First Amended Complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6); the Court therefore GRANTS the motions to dismiss the Complaint. (Dkt. Nos. 72, 73.) Because further amendment as indicated by the proposed Second Amended Complaint would be futile, the dismissal is with prejudice. Finally, the Court DENIES leave to amend (Dkt. No. 89) but also DENIES Defendants' requests to strike the filing (Dkt. Nos. 90, 91).

The clerk is ordered to provide copies of this order to all counsel.

Dated this 31st day of October, 2014.

Marsha J. Pechman
Chief United States District Judge

ORDER ON MOTIONS TO DISMISS, SECOND
AMENDED COMPLAINT- 8